# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## ON MOTION FOR REHEARING

## NO. 03-09-00371-CR

**Adam Lee Castillo, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
## NO. D-1-DC-07-204001, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## **O P I N I O N**

We withdraw our opinion and judgment dated August 13, 2010, and substitute the following in its place. We overrule Castillo's motion for rehearing.

A jury convicted appellant Adam Lee Castillo of the offense of capital murder. *See* Tex. Penal Code Ann. § 19.03(a)(7)(A) (West Supp. 2009). Punishment was assessed at life imprisonment. In a single point of error, Castillo asserts that the district court erred by permitting alternate jurors to be present during deliberations. We will affirm the judgment.

## BACKGROUND

Castillo was charged with murdering two individuals and brought to trial. At the conclusion of voir dire, twelve jurors were selected, plus two alternates. The trial then began. After

closing arguments, the jury, plus the two alternates, retired to deliberate. At some point either prior

to or during deliberations, the jury had been given a supplemental instruction regarding the conduct

of the alternates. The instruction stated:

> LADIES AND GENTLEMEN OF THE JURY:
>
> Your jury includes two alternate jurors. In order of selection, they are jurors: [names of alternate jurors].
>
> The law requires that the alternate jurors remain through the entirety of the trial process. In this vein, the alternates cannot be selected as foreperson of the jury and cannot actively participate in deliberations until they are used as a replacement for a regular juror. The alternates must attentively listen to all deliberations, as it is always uncertain if and when we might need to utilize them in the process until the trial is concluded. Alternates serve quite a valuable purpose, and without them, much time and dollars would be spent in the re-trial of cases. Thus, our legislature has enacted this provision providing for the above process for alternate jurors.[1]

At some point after the jury had retired to deliberate, defense counsel approached the bench and

objected to the supplemental instruction and the presence of the alternate jurors in the jury room.[2]

---

[1]  The instruction is referring to article 33.011(b) of the code of criminal procedure. *See* Tex. Code Crim. Proc. Ann. art. 33.011(b) (West Supp. 2009).

[2]  It is unclear from the record exactly when during deliberations the objection was made. The record reflects that the following occurred after closing arguments:

> The Court:          You may retire to the jury room.
>
> (Jury deliberations)
>
> (Open court, no defendant, no jury)
>
> (At the Bench, on the record)

2

Counsel argued that the presence of the alternates in the jury room violated article 33.01 of the code of criminal procedure, which provides that a jury in the district court "shall consist of twelve qualified jurors," *see* Tex. Code Crim. Proc. Ann. art. 33.01 (West 2006), and article 36.22, which provides, "No person shall be permitted to be with a jury while it is deliberating," *see id*. art. 36.22 (West 2006). Counsel also lodged a generic due process complaint.

In response, the State argued that article 33.011 of the code of criminal procedure required the alternates to be present and that article 36.22 was not referring to alternate jurors. In the State's view, "it would not seem to make too much sense that alternate jurors sit outside and miss the deliberations. In case something happens to one person, they have to come in and everything starts fresh." The State then asked to "go off record for one moment."

Following an off-the-record discussion and a recess, defense counsel amended his objection to include article 5, section 13 of the Texas Constitution, which requires that "juries in the District Courts shall be composed of twelve persons." *See* Tex. Const. art. V, § 13. The State, after acknowledging that a recent case out of the San Antonio Court of Appeals supported Castillo's

---

[Defense counsel]:    Your Honor, I understand the Court is sending back an instruction regarding alternate jurors which allows the alternate jurors to remain in the jury room but not participate in the deliberations until they replace an active juror. We would object to sending that order back and object to their presence in the jury room . . . .

The record does not reflect how long the jury had been deliberating when counsel approached the bench, although a later comment by the district court suggests that it was no more than approximately thirty minutes after the jury had retired.

3

position,[3] maintained, "We're satisfied at this point with what has gone on, both from a statutory and a constitutional basis . . . . We will probably ask the Court as an additional potential safeguard just to have them not communicate, not only in deliberations, but just not to anything at all."

The district court acknowledged that article 33.011 required the alternate jurors "to stay" until a verdict is reached, and proceeded to read into the record the supplemental instruction that it had previously given to the jury. After reading the instruction, the district court noted, "And then I have signed and dated it and sent it to each individual juror as well as the alternates." The district court added,

> In addition, I think what I'm going to do is call all of them, they've only been back in the jury room for 30 minutes. I'm going to call them in with everybody present and instruct them orally as to their discussions and what they can and cannot say while they are in the jury room as alternates and make them understand that they cannot talk about anything having to do with Mr. Castillo's case until they become an actual juror in the case. And that will hopefully alleviate any misunderstanding that they may have about their role as an alternate.

Once the members of the jury and the alternates returned to the courtroom, the district court orally instructed them:

> Ladies and gentlemen of the jury, excuse me for interrupting your deliberations, but I wanted to place some emphasis on the instruction that I had earlier given you regarding the jury alternates.
>
> It's very important that the alternates not actively speak and participate in the deliberations regarding the case at this point. They will only be able to talk about any of the evidence or any of the facts and circumstances surrounding this offense and

---

[3] *See Trinidad v. State*, 275 S.W.3d 52, 61 (Tex. App.—San Antonio 2008), *rev'd*, 312 S.W.3d 23 (Tex. Crim. App. 2010).

this case if and when they become jurors in the case. However, it is just as important that they be able to sit there and listen so, if needed, they will be aware of everything that has taken place as far as what you have done in this case. But it is critical that they not speak in this regard.

I wanted to personally bring each of you out here so that you will all know that and for the security of the case in the future to let you know how important that is that the alternates not participate until called upon to be a regular juror. Do each of you understand?

The record reflects that the jury members replied, "Yes." The district court then concluded, "Thank you. You can go back and continue your deliberations." The jury then retired to resume deliberations. Defense counsel never objected to the district court's oral instruction.

Later, the jury returned its verdict of guilty. Defense counsel requested that the jury be polled, and each of the twelve individual members of the jury affirmed that the verdict represented his or her individual verdict in the case. Immediately thereafter, Castillo was assessed a mandatory sentence of life imprisonment. The jury was then excused. This appeal followed.

**ANALYSIS**

In his sole point of error, Castillo carries forward the arguments he made at trial, namely that the presence of the two alternates in the jury room violated his constitutional and statutory rights to have a jury composed of no more than twelve jurors and the statutory prohibition against outside influence. While acknowledging the district court's instructions to the jury that the alternates not participate in the deliberations, Castillo claims—for the first time on appeal—that the district court's instructions were insufficient. According to Castillo, prejudice should be presumed from the alternates' presence in the jury room during deliberations, and, in his view, it was

incumbent upon the State to make an offer of proof demonstrating that the alternates did not participate in deliberations. As no such offer of proof was made in this case, Castillo asserts, harm should be presumed and the cause reversed for a new trial.

In response, the State makes three arguments. First, the State contends that Castillo failed to preserve error by not objecting until after deliberations had begun. Second, the State asserts that there was no constitutional or statutory error in allowing the alternates to be present in the jury room during deliberations. Finally, the State argues that any error was harmless because of the district court's instructions to the jury regarding the alternates and that Castillo failed to show that the jury conversed with the alternates in violation of the court's instructions.

This case concerns the 2007 amendment to article 33.011(b) of the code of criminal procedure. Prior to September 1, 2007, article 33.011(b) required alternate jurors to be discharged "after the jury retires to consider its verdict." *See* Act of May 30, 1983, 68th Leg., R.S., ch. 775, § 2, 1983 Tex. Gen. Laws 4593, 4594 (amended 2007) (current version at Tex. Code Crim. Proc. Ann. art. 33.011(b)). However, as the statute is currently written, alternate jurors "shall be discharged after the jury has rendered a verdict on the guilt or innocence of the defendant and, if applicable, the amount of punishment." Tex. Code Crim. Proc. Ann. art. 33.011(b) (West Supp. 2009). The statute does not address what trial courts should do with alternate jurors during deliberations but prior to the jury rendering its verdict—sequester them until such time as their services might be needed, or allow them to be present in the jury room during deliberations even if their services are not needed. The district court in this case chose the latter option.

6

In two opinions decided in 2008, the San Antonio Court of Appeals took issue with the practice of permitting alternate jurors to be present during deliberations. *See Adams v. State*, 275 S.W.3d 61 (Tex. App.—San Antonio 2008), *rev'd*, 312 S.W.3d 23 (Tex. Crim. App. 2010); *Trinidad v. State*, 275 S.W.3d 52 (Tex. App.—San Antonio 2008), *rev'd*, 312 S.W.3d 23 (Tex. Crim. App. 2010). In these opinions, the court held that the practice violates either the constitutional prohibition against more than twelve jurors deliberating, or, if the alternate is not considered a juror, article 36.22's prohibition against outside influence. *See Adams*, 275 S.W.3d. at 67; *Trinidad*, 275 S.W.3d at 60. Additionally, in each opinion, the court held that the right to a twelve-member jury is a "waivable-only right" and that the defendant is not required to comply with rule 33.1 in order to preserve error on appeal. *See Adams*, 275 S.W.3d at 65; *Trinidad*, 275 S.W.3d at 58. Castillo cites to both of these opinions in his brief.

After this case was briefed by the parties, the court of criminal appeals reversed both *Adams* and *Trinidad*. *See Trinidad v. State*, 312 S.W.3d 23 (Tex. Crim. App. 2010). The court held that allowing the alternate jurors to be present in the jury room during deliberations did not violate the constitutional prohibition against deliberation by more than twelve jurors. *See id*. at 28. The court declined to address the merits of the alleged violation of article 36.22, but held that any complaint about a statutory violation was forfeited by the appellants' failure to invoke the statute in a timely manner. *See id*. at 24.

With the above considerations in mind, we turn to the case before us. We first address the State's contention that Castillo failed to preserve error. As a prerequisite to presenting a complaint for appellate review, the record must show that the complaint was made to the trial court

7

by a timely and specific request, objection, or motion. *See* Tex. R. App. P. 33.1. Here, the record shows that, when Castillo objected, he cited to the specific constitutional and statutory provisions that he claimed were being violated by allowing the alternate jurors to be present during deliberations. However, regarding his objection to the supplemental instruction, Castillo never indicated why he believed the instruction was erroneous. He complains on appeal that "neither the written or verbal instruction included an admonition to recommence deliberation or disregard any possible statements made by the outside alternate jurors," but this complaint was never made to the district court. Nor did Castillo raise any objection to the court's subsequent oral instruction to the jury.[4] Additionally, to the extent Castillo is alleging a violation of article 36.22, he is essentially arguing juror misconduct. *See Ocon v. State*, 284 S.W.3d 880, 885 (Tex. Crim. App. 2009) (characterizing violation of article 36.22 as complaint of juror misconduct); *Hughes v. State*, 24 S.W.3d 833, 842 (Tex. Crim. App. 2000) (same). To preserve error caused by juror misconduct, the defendant must either move for a mistrial or file a motion for new trial supported by affidavits of a juror or other person in a position to know the facts alleging misconduct. *See Trout v. State*, 702 S.W.2d 618, 620 (Tex. Crim. App. 1985); *Menard v. State*, 193 S.W.3d 55, 59 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd). Castillo did neither.[5]

---

[4] In his motion for rehearing, Castillo asserts that he "objected to *any* instructions" regarding alternate jurors. On the contrary, the record reflects that Castillo objected only to the district court's written instruction, and even then, he did not ask the district court to include in the written instruction an admonition to recommence deliberation or disregard any possible statements made by the outside alternate jurors.

[5] While Castillo did file an amended motion for new trial, he did not include in the motion the complaints he now raises on appeal, much less affidavits from the jurors or alternate jurors who were in a position to know if the facts alleging a violation of article 36.22 had occurred.

However, even assuming Castillo had preserved error, we could not conclude on this record that Castillo was entitled to reversal and a new trial. The court of criminal appeals has held that the presence of alternate jurors in the jury room does not violate article 5, section 13 of the Texas Constitution. *Trinidad*, 312 S.W.3d at 28. There is no error, according to the court, so long as the alternate jurors are not "allowed to vote on the ultimate verdict in the case, at either stage of trial." *Id*. The court explained,

> As long as only the twelve regular jurors voted on the verdicts that the appellants received, it cannot be said that they were judged by a jury of more than the constitutionally requisite number. That the alternate jurors were present in the jury rooms during deliberations, and may even have participated in all but the voting, does not mean that the jury was "composed" of more than twelve members for purposes of Article V, Section 13.

*Id*. In this case, there is no indication in the record that the alternate jurors voted on the verdict. Thus, we cannot conclude on this record that there was a constitutional violation. For the same reason, we cannot conclude that there was a violation of article 33.01(a) of the code of criminal procedure, the statute that codifies the constitutional requirement of no more than twelve jurors. *See id*. at 29 n.22 ("Article 33.01(a) was not violated any more than Article V, Section 13 was. Because only twelve regular jurors ultimately voted on the appellants' verdicts, their juries did 'consist' of twelve jurors for purposes of the statute."). Nor can we agree with Castillo's contention that the procedure for replacing regular jurors with alternate jurors as specified in article 33.011(b) was violated. *See* Tex. Code Crim. Proc. Ann. art. 33.011(b) ("Alternate jurors in the order in which they are called shall replace jurors who, prior to the time the jury renders a verdict . . . become or are

9

found to be unable or disqualified to perform their duties . . . ."). There is no indication in the record that the alternate jurors improperly took the place of the regular jurors during deliberations.

Thus, all that remains is the issue left unresolved by the court of criminal appeals—whether the practice of allowing alternate jurors in the jury room violates the requirement in article 36.22 that "[n]o person shall be permitted to be with a jury while it is deliberating." However, we need not address that question today. Even if the district court's practice violated the statute, we could not conclude on this record that Castillo was harmed by the violation. As the court of criminal appeals noted in *Trinidad*, harm from statutory error is governed by rule of appellate procedure 44.2(b). *See Trinidad*, 312 S.W.3d at 27 & n.15. Thus, unless the error affected Castillo's substantial rights, it must be disregarded. *See* Tex. R. App. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).

Here, the district court instructed the jury in writing who the alternates were and informed the jury that "the alternates cannot be selected as foreperson of the jury and cannot actively participate in deliberations until they are used as a replacement for a regular juror." Then, after the jury had been deliberating for approximately thirty minutes, the district court decided to call the jury back into the courtroom and "place some emphasis on the instruction that I had earlier given you regarding the jury alternates." The district court then orally instructed the jury:

> It's very important that the alternates not actively speak and participate in the deliberations regarding the case at this point. They will only be able to talk about any of the evidence or any of the facts and circumstances surrounding this offense and this case if and when they become jurors in the case. However, it is just as important that they be able to sit there and listen so, if needed, they will be aware of everything

10

that has taken place as far as what you have done in this case. But it is critical that they not speak in this regard.

I wanted to personally bring each of you out here so that you will all know that and for the security of the case in the future to let you know how important that is that the alternates not participate until called upon to be a regular juror. . . .

We find no error in the district court's instructions, and there is no indication in the record that the jury or the alternates disregarded the instructions in any manner. To the contrary, when asked if they understood the court's instructions, the jury members replied, "Yes."

Castillo claims that because the alternate jurors were present in the jury room, harm should be presumed and that the State has the burden to rebut the presumption of harm. We disagree. A similar issue was previously addressed by this Court in *Klapesky v. State*, 256 S.W.3d 442 (Tex. App.—Austin 2008, pet. ref'd), a case cited by Castillo. In that case (involving a trial that had occurred prior to the 2007 amendment to article 33.011(b)), the trial court selected two alternate jurors but explained that the alternate jurors would be excused at the beginning of deliberations if they were not needed. *Id*. at 451-52. At the beginning of deliberations, however, the trial court forgot to discharge the alternates and they proceeded to the jury room. *Id*. at 452. Approximately five minutes later, the trial court returned the jury to the courtroom, discharged the alternates, instructed the jury to disregard anything said in the presence of the alternate jurors and to begin deliberations, and asked the jury if deliberations had commenced. *Id*. The jury replied that they had not. *Id*. On appeal, the appellant claimed that the presence of the alternate jurors in the jury room violated article 36.22.

In overruling the appellant's point of error, this Court explained that harm to the accused is presumed when a juror converses with an unauthorized person about the case and that, if the presumption of harm arises, the State has the burden to rebut the presumption by showing no injury or prejudice to the accused. *Id.* "However," this Court added, "the defendant has the initial burden to show that a conversation about the case on trial occurred between a juror and an unauthorized person. The defendant's burden is not satisfied if there is no showing what a reported conversation was about." *Id.* (internal citations omitted). In that case, "there [was] no showing of any conversation about the case between the two alternate jurors and the regular jurors during the time period involved." *Id.* Similarly, in this case, Castillo made no showing that the alternate jurors conversed with the regular jurors regarding the case in violation of the district court's instructions. Thus, Castillo failed to meet his initial burden.

The other cases cited by Castillo are distinguishable. In *Quinn v. State*, 958 S.W.2d 395 (Tex. Crim. App. 1997), *Alba v. State*, 905 S.W.2d 581 (Tex. Crim. App. 1995), and *Green v. State*, 840 S.W.2d 394 (Tex. Crim. App. 1992), the defendant first presented evidence that jurors had actual conversations and contact with outside influences (none of whom were alternate jurors). In each case, the State was required to rebut the presumption of harm. In this case, in contrast, the defendant presented no evidence that the alternate jurors conversed with the regular jurors. Thus, the presumption of harm does not arise here. Similarly, in *Rojas v. State*, 171 S.W.3d 442 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd), a case decided prior to the 2007 amendment to article 33.011(b), there was evidence presented that an alternate juror may have asked at the beginning of deliberations "whether anyone wanted to volunteer" to be foreperson, and the State was

12

required to rebut the presumption of harm. *Id*. at 450 & n.1. Again, in this case, Castillo made no showing of a conversation involving the alternate jurors.

In his motion for rehearing, Castillo suggests that requiring the appellant to obtain information from jurors regarding whether the alternates participated in deliberations violates the prohibition against inquiring into jurors' "mental processes" during deliberations.[6] *See* Tex. R. Evid. 606(b). However, the rule expressly allows jurors to testify regarding "whether any outside influence was improperly brought to bear upon any juror." *See id*. Moreover, the court of criminal appeals has recognized the questioning of jurors as a permissible method to inquire into potential article 36.22 violations and that the party alleging such a violation, "not the State nor the court, should initiate juror questioning." *See Ocon*, 284 S.W.3d at 885-87. Because Castillo failed to do so, we cannot conclude on this record that the district court's procedure had a substantial and injurious effect or influence in determining the jury's verdict.

We overrule Castillo's sole point of error.

---

[6] Castillo also asserts in his motion for rehearing that requiring such a procedure is "impractical." Castillo's counsel cites to no authority on this point, other than his "personal experience that jurors generally do not want to talk about their service." However, jurors may be questioned during trial about alleged article 36.22 violations, thus alleviating the need to depose or subpoena jurors after they have been excused from service. In this case, when the district court brought the jury into the courtroom during a break in deliberations and orally instructed the jurors that the alternates should not participate in deliberations, Castillo could have requested permission from the district court to question the jurors about whether the alternates had already participated in deliberations contrary to the district court's instructions. Castillo did not do so.

**CONCLUSION**

We affirm the judgment of the district court.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed on Motion for Rehearing

Filed:   September 10, 2010

Publish